896 A.2d 566

**In re Nomination Petition of Timothy J. CARROLL**

**Appeal of Timothy J. Carroll.**

Supreme Court of Pennsylvania.

Submitted April 5, 2006.

Decided May 2, 2006.

Marsha Anne Sajer, Esq., William E. Vinsko, Jr., Esq., Wilkes–Barre, for Timothy J. Carroll.

Jonathan Scott Comitz, Wilkes–Barre, for Dennis Garvey.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## OPINION

Justice CASTILLE.

Appellant/candidate Timothy J. Carroll appeals from the order of the Commonwealth Court granting appellee/objector Dennis Garvey's petition to set aside Carroll's Nomination Petition for the Republican nomination for the office of Representative in the General Assembly from the 117th Legislative District, Wyoming County, Pennsylvania. The effect of the order below was to strike Carroll's name from the primary ballot. For the reasons that follow, we reverse the order setting aside Carroll's nomination petition and we order that Carroll's name be restored to the primary ballot.[1]

On March 1, 2006, Carroll, the Mayor of Dallas Borough, Wyoming County, filed a timely nomination petition with the Secretary of the Commonwealth seeking to have his name

---

1. Garvey's petition was filed in the Commonwealth Court's original jurisdiction, pursuant to Section 764(2) of the Judicial Code. 42 Pa.C.S. § 764(2). This Court's direct appeal jurisdiction over Carroll's appeal is pursuant to Section 723(a) of the Code. *Id.* § 723(a).

placed on the Republican Primary ballot for the Office of Representative in the General Assembly from the 117th Legislative District. Carroll contemporaneously filed a Statement of Financial Interests, as required by Section 1104(b) of the Public Official and Employee Ethics Act ("Ethics Act" or "Act"), 65 Pa.C.S. § 1101 *et seq.*:

> (1) Any candidate for a State-level public office shall file a statement of financial interests for the preceding calendar year with the commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

> \* \* \* \*

> (3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.

*Id.* § 1104(b).[2] Block 4 of the Statement of Financial Interests form (which is produced by the State Ethics Commission) directs the filer to list his "PUBLIC POSITION OR PUBLIC OFFICE (member, Commissioner, job title, etc.)."[3] The Block allows the filer to check the position(s) he is seeking, holds or held. Within that block, Carroll listed the positions he holds as "MAYOR" and "LEGISLATIVE AID HOUSE,"

---

**2.** Subsection 1104(b)(2) governs candidates for county or local office and thus is not relevant here.

**3.** The State Ethics Commission's instructions provide, with respect to Block 4:

> Please check the appropriate block (seeking, holding, held) for each position you list in the blocks below. List all of the public position(s) which you are seeking, currently hold or have held in the **prior** calendar year. Please be sure to include job titles and official titles such as "member" or "commissioner" (even if serving as alternate/designee).

and he listed the position he was seeking as "PA HOUSE OF REPRESENTATIVE [sic]." [4]

On March 14, 2006, Garvey, a registered Republican and qualified elector in the 117th Legislative District, filed a petition to set aside Carroll's nomination petition, alleging that Carroll's Statement of Financial Interests was "fatally" defective under Section 1104(b). Specifically, Garvey claimed that Carroll had failed to list two affiliations he was required to disclose pursuant to Section 1105(b) of the Act, which provides, in relevant part:

> **(b) Required information.**—The statement shall include the following information for the prior calendar year with regard to the person required to file the statement:
>
> (1) Name, address and public position.

* * * *

> (8) Any office, directorship or employment of any nature whatsoever in any business entity.

65 Pa.C.S. § 1105(b)(1), (8). First, Garvey alleged that Carroll violated subsection (b)(1) because he failed to list in Block 4 the unpaid public position he held as a board member and Assistant Secretary of the Dallas Area Municipal Authority ("DAMA"). Second, Garvey alleged that Carroll violated subsection (b)(8) because, in Block 13 of the Financial Statement—a block requiring filers to list "OFFICE, DIRECTORSHIP OR EMPLOYMENT IN ANY BUSINESS"—Carroll failed to list his uncompensated presidency of the not-for-profit "Timothy J. Carroll's Mayors Club of Dallas Borough" ("Mayors Club").[5] Either or both defects, Garvey alleged, rendered Carroll's nomination petition fatally defective.[6]

---

**4.** In Block 5, Carroll further identified these public positions, as required.

**5.** The Ethics Commission's instructions for Block 13 provide:

*OFFICE, DIRECTORSHIP OR EMPLOYMENT IN ANY BUSINESS ENTITY:* List your office, directorship or employment in any business. If you do not have such a position to report, then check "NONE".

**6.** In his petition to set aside, Garvey also alleged that Carroll failed to list, as a direct or indirect source of yearly income totaling $1300 or

On March 20, 2006, the Commonwealth Court, per the Honorable James R. Kelley, Senior Judge, held a hearing on Garvey's Petition. The sole issue before the Court relevant here was the legal question of whether the above two omissions on Carroll's Statement of Financial Interests rendered it "fatally defective" under Section 1104(b)(3), thus warranting that Carroll's nomination petition be set aside.

At the hearing, Carroll testified that he created the Mayors Club to fund community projects. The Club is funded entirely by public donations, including donations by Carroll and people serving on borough council who donate their public salaries. Carroll testified that he gives the Club his entire salary of $600. The average balance in the Club's account is approximately $3,000.00. This money is used to finance projects that cannot be funded with taxpayer money. For example, the Club assisted the local Boy Scout troop, donated $300 to a scholarship fund, and gave $200 to a group that was assisting victims of Hurricane Katrina. Projects undertaken by the Club are discussed with borough council and reflected in the minutes of borough council meetings. Carroll receives no salary, income, or any benefit in kind from the Club. When asked why he did not report his association with the Club on his Statement of Financial Interests, Carroll responded that he viewed the Club to be part of his duties as Mayor, and that he received no compensation in connection with it. N.T. 3/20/06, 14–19.

With regard to his positions with DAMA, Carroll testified that he was appointed as a consequence of his position as Mayor, and that he received no salary, income or any other benefit as a result of serving on DAMA. Carroll further testified that he did not report this position on his Statement of Financial Interest for the same reason he did not report the Mayors Club: he received no compensation for his work and

more, *see* 65 Pa.C.S. § 1105(b)(5), his part-time position as a police officer with the Dallas Township Police Department. Garvey withdrew this claim at the hearing after the parties stipulated that Carroll only received $1268 in income from this employment in 2005. N.T. 3/20/06, 3–4.

he believed his service to be part of his mayoral duties. *Id.* at 20.

On March 22, 2006, Judge Kelley issued a single-judge order and memorandum opinion which granted Garvey's petition and "regrettably" set aside Carroll's nomination petition. In Judge Kelley's view, the case was "controlled by" *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth. 2003), *aff'd per curiam without opinion,* 573 Pa. 512, 827 A.2d 373 (2003). In *Anastasio,* the candidate (there, for local office) had entered "None" in block 10 of the Financial Statement—a block which directs disclosure of "direct or indirect sources of income." The candidate in fact had employment income. An objector filed a petition to strike, alleging a fatal defect; the trial court agreed and struck the nomination petition; a three-judge panel of the Commonwealth Court affirmed the order in a brief published opinion; and this Court affirmed *per curiam,* by a vote of 4–3. Judge Kelley reasoned that, like the candidate in *Anastasio,* Carroll had "failed to designate anything on his financial statement from which a reviewer could ascertain that he served as the President of the Club and on the Board of DAMA."

Judge Kelley also deemed the total non-disclosures here to be sufficient to distinguish the case from *In re Nomination Petition of Kerry Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004). In *Benninghoff,* the candidate was an incumbent state representative seeking reelection who failed to list the Commonwealth as a direct source of income in Block 10. Benninghoff did, however, advert to his salaried position as a state representative (a salary which was of public record) in multiple other blocks on the form, and he disclosed supplemental income. This Court held that Benninghoff had "substantially complied" with the requirements of the Ethics Act, and thus he should be permitted to amend the form. We therefore reversed the decision below, which had granted a petition to set aside Benninghoff's nomination petition.

Finally, although Judge Kelley acknowledged Carroll's argument that the non-disclosures at issue here involved uncompensated service, he summarily rejected that claim as follows:

"[t]he Ethics Act and the form instructions require identification of these offices regardless of compensation or financial interest." Slip op. at 7–8.

In his brief to this Court, Carroll argues that the fatal defect rule in Section 1104(b)(3), and as construed in *Anastasio*, does not apply to a failure to report his **non-compensated** positions with DAMA and the Mayors Club. Carroll notes that the Act speaks to financial interests, is designed to expose potential financial conflicts, and thereby acts to strengthen the faith and confidence of the people in their government by assuring the impartiality and honesty of public officials. Brief for Appellant, 7 (*citing* 65 Pa.C.S. § 1101.1(a)). Carroll argues that the fatal defect rule is designed to ensure that financial disclosures are fully and timely made, so that they may inform the public about a candidate's financial interests, thus facilitating the ability of the public to assess whether those financial interests are likely to influence, or conflict with, the candidate's execution of his public responsibilities. Consistently with this purpose, Carroll notes, the rule to date has been applied to terminate candidacies only where the candidate failed to file a timely financial statement,[7] filed a timely financial statement but failed to disclose the sources of income or debts,[8] or filed the financial statement in the wrong location.[9] Brief for Appellant, 7–8.

Carroll notes that none of the heretofore-recognized reasons for disqualification exists here. He filed his nomination petition and Statement of Financial Interests in timely fashion; he filed in the right place; and he did not fail to disclose any relevant **financial** interest. On the last point, Carroll notes that, in the cases where this Court has passed upon alleged defects in the **substance** of financial statements, we have applied the fatal defect rule only where there were "errors of omission relating to a candidate's financial interests." *Id.* at 9, *citing In re Nominating Petitions of Braxton*, 583 Pa. 35, 874

7. *Citing In re Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146, 149 (1993).

8. *Citing Anastasio, supra.*

9. *Citing In the Matter of Nomination Petition of Wilson*, 728 A.2d 1025 (Pa.Cmwlth.1999).

A.2d 1143 (2005) (*per curiam* ) and *In re Nomination Petition of Katofsky,* 582 Pa. 557, 872 A.2d 1196 (2005) (*per curiam* ). *See and contrast Benninghoff, supra* (fatal defect rule not applied where candidate in substantial compliance with requirement to disclose financial interests). Carroll emphasizes that it is undisputed that there is no financial interest implicated in either of the positions he has been accused of wrongly failing to report. Thus, he did not deprive the voting public of information about his financial interests that would allow voters to assess whether those interests potentially conflict with the public trust. Instead, he has been denied the opportunity to appear on the ballot because his full disclosure of his **financial** interests did not include an exhaustive summary of his **non-financial** public associations. Carroll maintains that the Commonwealth Court's extension of the fatal defect rule to failures to report non-financial interests is an "unprecedented expansion" which cannot be squared with the terms or purpose of the Ethics Act and the financial statement requirement.

Because he receives no compensation from, and had no financial interest in, either of the associations he failed to report, Carroll argues that his Financial Statement cannot be deemed defective. He then cogently argues that:

> To decide otherwise would mandate the reporting of any and every voluntary or not-for-profit affiliation which a candidate *or public official* may hold for fear of falling into the technical trap created by the Commonwealth Court's ruling . . ., such as President of the Parent Teachers Association, Treasurer of the Township Youth Soccer Program, Chair of a church committee and a myriad of others.

> The Legislature intended to require the disclosure of potential financial entanglements by Commonwealth officials and employees. The financial disclosure rules are not intended to deter those serving as elected officials from continuing to contribute to community life in other ways. To the contrary, the Legislature recognized that civically active citizens are likely to both run for political office and to continue to participate in ordinary civil life. *See* 65

Pa.C.S. [§ ] 1101.1(b) ("It is recognized that many public officials, including most local officials and members of the General Assembly, are citizen-officials who bring to their public office the knowledge and concerns of ordinary citizens and taxpayers. They should not be discouraged from maintaining their contacts with their community through their occupations and professions.").

Here, Garvey seeks to disqualify Carroll not because he failed to disclose positions for which he is compensated or businesses in which he has a financial interest but merely because he failed to list his position with a non-profit organization and his service on a municipal authority, both undertaken solely as an adjunct to his official duties as borough mayor.

Brief for Appellant, 9–10.

In addition to his broad argument stressing that the financial statement required by the Ethics Act is concerned only with financial interests, Carroll also addresses each of the affiliations at issue. With respect to his role in the Mayors Club, which Garvey claimed had to be disclosed as a "business entity" affiliation under Section 1105(b)(8), Carroll notes that the term "business entity" is not defined in the Ethics Act. But, Carroll argues, the elemental term "business" is defined in the Act, and in a way that makes plain that it encompasses only **for-profit entities**: "[a]ny corporation, partnership, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust or any legal entity **organized for profit**." 65 Pa.C.S. § 1102 (emphasis supplied). Under the plain language of this definition, Carroll argues that his failure to list his position as president of the non-profit Mayors Club did not violate the Ethics Act because there is "simply nothing" in the Act that requires disclosing affiliations with non-profit business entities. Moreover, Carroll argues, even if this plain language could be construed to be ambiguous, it would be inequitable and unfair to fault him for failing to predict such an interpretation. Carroll accurately notes that there is no case decision, and no rulings or information from the

Ethics Commission, to warn candidates of such a non-textual interpretation. Carroll notes that the Act explicitly recognizes the need for "clear guidelines," see 65 Pa.C.S. § 1101.1(a), yet the novel interpretation invoked against him below was not based upon any extant, clear guideline.

Turning to DAMA, where his affiliation is as an unpaid Board member and Assistant Secretary, Carroll argues that he serves on the Authority only by virtue of his position as Mayor. Because he listed his mayoralty, Carroll argues, he also effectively disclosed this lesser-included affiliation. In any event, Carroll notes, nothing in the fact of this position, which is but an incident of his (disclosed) public position as Mayor, speaks to his financial situation, as he has no financial stake in DAMA and he receives no compensation. Thus, had he listed the affiliation, Carroll argues, it would have contributed nothing to the public's understanding of his financial interests.

Finally, and in the alternative, Carroll argues that even if his Financial Statement could be deemed defective for failing to list these two unpaid associations, he should be permitted to amend it pursuant to the substantial compliance rule announced in *Benninghoff*.

Garvey counters with an absolutist position. He argues that Carroll's "errors of omission" were fatal defects and thus his nomination petition was rightly set aside. Thus, in Garvey's view, Section 1105(b)(8) of the Act "mandates" that a candidate "disclose any office of any nature whatsoever in any business entity." Brief of Appellee, 6. Carroll's position as president of the Mayors Club therefore had to be reported on his Financial Statement. Garvey stresses the broad language of the provision when read in isolation, *i.e.,* "any office" of "any nature" in "any business entity." Garvey then notes that the Mayors Club is an active non-profit corporation registered with the Pennsylvania Department of State, and Carroll is its president and sole officer. Therefore, Garvey argues, Carroll had to report this business "office" and his failure to do so was a fatal defect. Notably, Garvey does not address Carroll's

argument that the Act defines "business" in terms of for-profit entities.

With regard to Carroll's positions with DAMA, Garvey argues that Section 1105(b)(1) "obligates" candidates to disclose public positions they hold or held. Garvey then argues that appointed members of municipal authorities are public officials, and therefore, Carroll's failure to report his position with DAMA was an independent fatal defect. Moreover, Garvey disputes Carroll's argument that his service on DAMA was a mandatory incident of his elected position as Mayor; to the contrary, Garvey maintains, this association was "purely voluntary."

Garvey also disputes Carroll's argument that he substantially complied with the Act. Garvey argues that Carroll's omissions in Blocks 4 and 13 involve associations not otherwise accounted for in the Financial Statement, and that fact renders inoperable the substantial compliance rule set forth in *Benninghoff.* Garvey concludes that either or both of Carroll's omissions rendered his Statement of Financial Interests fatally defective under Section 1104(b)(3) of the Act, warranting that his nomination petition be set aside.

Notably, at the outset of his otherwise straightforward argument, Garvey acknowledges that the "purpose" of the fatal defect rule is "to insure public disclosures of relevant **financial** information." Brief of Appellee, 10 (emphasis added). Yet, Garvey never discusses the fact that neither of Carroll's unreported positions implicated his financial information. Nor does Garvey argue, for example, that there is some indirect way in which Carroll's financial situation was implicated by these non-financial affiliations. Instead, Garvey focuses on the language of the Section 1105(b) affiliations in isolation, separate and apart from the overall financial emphasis of the form and the Act, as well as the purpose he has generally acknowledged, and then declares that any omission of information amounts to a fatal defect. Thus, there is a missing essential ingredient when Garvey later declares that the non-disclosures here deprived voters of "an opportunity to accurately inspect Carroll's financial portfolio." *Id.,* 17.

In reviewing an order concerning the validity of a challenge to a nomination petition, this Court may reverse only if the findings of fact are not supported by substantial evidence, there was an abuse of discretion, or there was an error of law. *In re Nomination Petition of Driscoll,* 577 Pa. 501, 847 A.2d 44, 49 (2004); *In re Nomination Petition of Flaherty,* 564 Pa. 671, 770 A.2d 327, 331 (2001). In this case, the necessary facts are not in dispute, and there is no discretionary ruling of the court below at issue. The question, instead, concerns the proper interpretation of the Ethics Act. As the question is one of statutory interpretation, a purely legal issue, this Court's substantive review is plenary and non-deferential. *E.g. Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003). The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a); *In re Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004). When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995); 1 Pa.C.S. § 1921(b). A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b). *See Canvass of Absentee Ballots,* 843 A.2d at 1230 *(citing O'Rourke v. Commonwealth, Dept. of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001)). In ascertaining legislative intent, this Court is guided by, among other things, the primary purpose of the statute, *see* 1 Pa.C.S. § 1921(c)(4), and the consequences of a particular interpretation. *Id.* § 1921(c)(6). *See Vitac Corp. v. Worker's Compensation Appeal Board (Rozanc),* 578 Pa. 574, 854 A.2d 481, 485 (2004).

Preliminarily, we note that the court below plainly erred to the extent it deemed the issue here to be "controlled by" the *Anastasio* case. *Anastasio* involved a failure to disclose a

direct source of income on a candidate's Statement of Financial Interests. In contrast, Carroll poses the very distinct question of whether and when a failure to disclose **nonfinancial** associations on a Statement of Financial Interests should trigger operation of the fatal defect rule. *Anastasio* does not purport to resolve that question. Nor does *Benninghoff* resolve the question as that case, too, involved the question of whether what was unquestionably a financial interest—the incumbent's legislative salary—was adequately accounted for in his financial statement. Although *Anastasio* and *Benninghoff* provide a backdrop for the current inquiry, and the "substantial compliance" rule obviously may have applications broader than were at issue in *Benninghoff,* neither case resolves the distinct question we must decide.

The intent and purpose of the Ethics Act is not shrouded in mystery. The Act is part of the "accountability" section of Title 65, which governs "public officers." In Section 1101.1 of the Act, the General Assembly explicitly set forth its "purpose" as follows:

(a) **Declarations.**—The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this chapter shall be liberally construed to promote complete financial disclosure as specified in this chapter. Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this chapter intends to define as clearly as possible those areas which represent conflict with the public trust.

65 Pa.C.S. § 1101.1(a). The substantive focus of this declaration is on financial interests, and particularly, how complete disclosure of financial interests may further the "public trust," "strengthen the faith and confidence of the people" in their government, and assure the public that the "financial interests" of public officials "do not conflict with the public trust." *See also Benninghoff*, 852 A.2d at 1186 ("The obvious purpose of the Ethics Act is to mandate disclosure of the financial dealings of public officials.").

Section 1102, the definitions section of the Act, defines "financial interest" as: "Any financial interest in a legal entity engaged in business for profit which comprises more than 5% of the equity of the business or more than 5% of the assets of the economic interest in indebtedness." *Id.* § 1102. As already noted in discussing Carroll's argument, the definitions section also defines the term "business" in a way that supports a reading that it intends to cover only for-profit entities.[10] Section 1104 then sets forth the annual "statement of financial interests" filing requirement, with subsections (a) through (c) describing the obligations of "public official or employee," "candidate," and "nominee," respectively. Subsection 1104(d) then addresses the failure to file, while subsection 1104(e) provides for public inspection and copying. In every instance, the required filing is designated "statement of financial interests." Section 1105, which is entitled "Statement of financial interests," then provides that the statement shall be on a form

---

**10.** We recognize that there are two possible constructions of the "organized for profit" reference in the Act's definition of "business," one which would construe the reference as modifying all previous examples in the definition (which is how Carroll reads the statute), and one which would construe it as applying only to the last antecedent example. See, *e.g., McKinley v. Commonwealth of Pennsylvania, Dept. of Transp.*, 564 Pa. 565, 769 A.2d 1153, 1160 n. 10 (2001) (discussing "last antecedent rule" of grammatical construction). To the extent the definitional language is ambiguous, we may look to principles of construction. 1 Pa.C.S. § 1921(b); *Canvass of Absentee Ballots, supra.* For reasons set forth at greater length below, the plainly-stated purpose of the statute, and the harsh consequence that would accompany a construction that would lead to a finding of a material non-disclosure, convince us that any ambiguity in the definition should be construed most favorably to candidates seeking ballot access.

prescribed by the State Ethics Commission and sets forth what required information must be included in the statement.[11]

11. Section 1105(a) & (b) provide in full:

(a) **Form.**—The statement of financial interests filed pursuant to this chapter shall be on a form prescribed by the commission. All information requested on the statement shall be provided to the best of the knowledge, information and belief of the person required to file and shall be signed under oath or equivalent affirmation.

(b) **Required information.**—The statement shall include the following information for the prior calendar year with regard to the person required to file the statement:

(1) Name, address and public position.

(2) Occupation or profession.

(3) Any direct or indirect interest in any real estate which was sold or leased to the Commonwealth, any of its agencies or political subdivisions, or purchased [ ] or leased from the Commonwealth, any of its agencies or political subdivisions, or which was the subject of any condemnation proceedings by the Commonwealth, any of its agencies or political subdivisions.

(4) The name and address of each creditor to whom is owed in excess of $6,500 and the interest rate thereon. However, loans or credit extended between members of the immediate family and mortgages securing real property which is the principal or secondary residence of the person filing shall not be included.

(5) The name and address of any direct or indirect source of income totaling in the aggregate $1,300 or more. However, this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics or common law privileges.

(6) The name and address of the source and the amount of any gift or gifts valued in the aggregate at $250 or more and the circumstances of each gift. This paragraph shall not apply to a gift or gifts received from a spouse, parent, parent by marriage, sibling, child, grandchild, other family member or friend when the circumstances make it clear that the motivation for the action was a personal or family relationship. However, for the purposes of this paragraph, the term "friend" shall not include a registered lobbyist or an employee of a registered lobbyist.

(7) The name and address of the source and the amount of any payment for or reimbursement of actual expenses for transportation and lodging or hospitality received in connection with public office or employment where such actual expenses for transportation and lodging or hospitality exceed $650 in the course of a single occurrence. This paragraph shall not apply to expenses reimbursed by a governmental body or to expenses reimbursed by an organization or association of public officials or employees of political subdivisions which the public official or employee serves in an official capacity.

(8) Any office, directorship or employment of any nature whatsoever in any business entity.

(9) Any financial interest in any legal entity engaged in business for profit.

■ In light of this construct, we have no difficulty in finding that the Act did not require Carroll to disclose his "interest" in the non-profit Mayors Club. The Act could not be any clearer that the concern is with **financial** interests. Moreover, the Act's definitions of the terms "financial interest" and "business"—definitions which, as Carroll reasonably construed them, *see supra* note 10, are in keeping with the purpose of the legislation announced in Section 1101.1—support a finding that Carroll was not required to list his association with it on his Financial Statement. The Mayors Club is a non-profit corporate entity, from which Carroll receives no financial compensation. Indeed, as a financial matter, his connection with the entity is a net loss, as the Mayors Club was funded, in part, from his donated mayoral salary.

■ Turning to Carroll's uncompensated positions with DAMA, we will assume for purposes of decision that these positions are indeed "public positions" for purposes of subsection 1105(b)(1) but, like Carroll's association with the Mayors Club, we conclude that disclosure was not required because the association did not remotely implicate Carroll's **financial** interests. Viewed in isolation, subsection (1) is unlike the other subsections in 1105(b) in that it does not address matters that necessarily involve financial information. Instead, the subsection concerns what amounts to the filer's identifying information: *i.e.*, his "name, address and public position." This information reveals who it is that is filing and why. It is important to remember that the Act, and the Commission's form, governs a wide variety of people in public service, people who may have to file for different and overlapping reasons.[12] Some file as incumbent office holders; some as incumbents seeking reelection; some as new candidates for office; some

(10) The identity of any financial interest in a business with which the reporting person is or has been associated in the preceding calendar year which has been transferred to a member of the reporting person's immediate family.
*Id.* (footnote omitted).

**12.** *See* 65 Pa.C.S. § 1104 (requiring public officials, public employees, and candidates for state-level, county-level, and local-level public office to file Statement of Financial Interests).

as long-term public employees seeking no office. In any given year, only a small percentage of Ethics Act filers are then actively seeking public office. Most filers are public employees who must detail their financial interests year after year, as the public trust does not go on holiday. Finally, some filers, like Carroll, must file for multiple reasons, *i.e.*, both because of positions currently held as well as an elected position actively being sought.

■ For purposes of the Act's fatal defect rule—a rule which applies only to the extent that a filer is filing as a "candidate" for office, *see* 65 Pa.C.S. § 1104(b)—we do not think that the directive that candidates list their "public position" (notably, the General Assembly employed the singular) can be viewed in splendid isolation from the rest of the Act, and thus as requiring a detailing of all existing public associations, irrespective of whether they implicate a candidate's financial interests or reveal the office the candidate is seeking. A reasonable person interested in seeking public office who consulted the statute, the Commission's form, and its accompanying instructions—all of which speak in terms of financial interests—could reasonably understand the subsection (1) requirement to apply only to those "positions" necessary to identify the candidate, the office he seeks, and his **financial** interests.[13] One does not have a financial interest in uncompensated positions one undertakes as a corollary to an official public position. The fact of the matter is that not all public positions and associations implicate a candidate's financial interests, and nothing in the statute purports to require disclosure of non-financial interests, upon pain of being excluded from seeking office.

■ Finally, in determining whether the General Assembly can be said to have intended the fatal defect rule to apply to the sort of "non-disclosure" alleged here, we must be "mindful of the general command that we presume that it 'does not intend a result that is absurd, impossible of execution or

---

**13.** Notably, Carroll testified that he did not report the disputed associations because, *inter alia,* he received no compensation from them.

unreasonable.' " *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 81 (2006), *quoting* 1 Pa.C.S. § 1922(1); *see also Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Bd.*, 583 Pa. 72, 876 A.2d 346, 353 (2005). As part of its statement of "purpose" in Section 1101.1, the General Assembly included the following "recognition:"

> It is recognized that many public officials, including most local officials and members of the General Assembly, are citizen-officials who bring to their public office the knowledge and concerns of ordinary citizens and taxpayers. They should not be discouraged from maintaining their contacts with their community through their occupations and professions. Thus, in order to foster maximum compliance with its terms, this chapter shall be administered in a manner that emphasizes guidance to public officials and public employees regarding the ethical standards established by this chapter.

65 Pa.C.S. § 1101.1(b). Many candidates for public office—like many current holders of public office—have numerous public associations and positions in addition to their official, paid positions. Many of these positions do not involve a financial interest and possible concomitant "violation of the public trust." *Id.* § 1101.1(a). These associations simply reflect active lives of good citizenship. Upon reading the Act as a whole, and with an eye to its obvious, salutary purpose, we do not believe that the General Assembly remotely intended the disproportionate consequence of denying a candidate the right to run for office to attend a failure to disclose a public "position" which does not involve the candidate's financial interests.

For these reasons, we hold that the court below erred in finding that Carroll's Statement of Financial Interests was fatally defective and in granting Garvey's petition to set aside Carroll's nomination petition. Accordingly, we reverse the order of the Commonwealth Court and direct that Carroll's name be restored to the primary ballot.[14]

14. In light of our disposition, we do not address the alternative arguments Carroll has forwarded in support of reversal.

Chief Justice CAPPY, Justice NEWMAN and Justices SAYLOR and EAKIN join this opinion.

Justice BAER files a dissenting opinion which is joined by Justice BALDWIN.

Justice BAER, dissenting.

While the Majority emphasizes our mandate in statutory interpretation to effectuate the intent of the General Assembly, and acknowledges that legislative intent typically is reflected in a statute's plain language, it construes the Public Official and Employee Ethics Act (Ethics Act or Act), 65 Pa.C.S. §§ 1101, *et seq.*, to permit Timothy J. Carroll (Candidate) to appear on the primary ballot despite his failure to make a mandatory disclosure under the Act. Because I believe this result defies the Ethics Act's plain language, I respectfully dissent.

The Commonwealth Court found fatal to Candidate's nomination petition his failure to disclose his positions as President of the not-for-profit "Timothy J. Carroll's Mayors Club of Dallas Borough" (the Club), *see id.* § 1105(b)(8) (requiring disclosure of "[a]ny office, directorship or employment of any nature whatsoever in any business entity"), and as board member on the Dallas Area Municipal Authority (DAMA), *see id.* § 1105(b)(1) (requiring disclosure of "[n]ame, address and public position"). I find no cause to disagree with the Majority to the extent that it finds that Candidate was not obligated to disclose his uncompensated office as president of the Club. I would not reach that question, however, because I believe Candidate's failure to disclose his position as board member for DAMA standing alone requires that his nomination petition be set aside. The analysis that follows, accordingly, concerns only that aspect of the Majority's opinion that forgives Candidate's failure to disclose his undisputedly public position with DAMA.[1]

---

1. My inclination is to construe the term "public position" narrowly to avoid undue challenges to would-be candidates' ballot access. That said, even on a narrow definition, board membership with a municipal sewage authority, which funnels substantial public funds into a function

Our object in construing a statute is "to effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). We construe a statute to give effect to all of its provisions, *id.*, rendering the entirety of a statute "effective and certain," *id.* § 1922(2), and guided by the presumption "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1).

The Ethics Act requires each public official and public employee to file an annual statement of financial interests (Statement), 65 Pa.C.S. § 1104(a), and requires a candidate for local, county, or state office to file his Statement on or before the last day for filing a petition to appear on the ballot. *Id.* § 1104(b). The Statement is to be filed on a form promulgated by the State Ethics Commission (Commission), *id.* § 1105(a), and must contain the information enumerated in § 1105(b). That section provides, *inter alia,* that a candidate for public office "shall" disclose his or her "[n]ame, address and public position." 65 Pa.C.S. § 1105(b)(1). The Statement of Financial Interests form (Form) promulgated by the Commission is consistent with this provision, requiring, in block 4, the candidate to disclose any "PUBLIC POSITION OR OFFICE (member, Commissioner, job title, etc.) [the candidate is] seeking[,] hold[s, or] held." The Ethics Act leaves no doubt as to the sanction for noncompliance with § 1105: "Failure to file the statement in accordance with the provisions of this chapter shall ... be a *fatal defect* to a petition to appear on the ballot." *Id.* § 1104(b)(3) (emphasis added).

The "fatal defect" rule is the product of the General Assembly's amendment to the Ethics Act following rulings by this Court allowing for some modicum of leniency in addressing candidates' good faith failures to observe the Act's require-

critical to public health, certainly qualifies. Indeed, testifying before the Commonwealth Court, Candidate all but conceded the point. *See, e.g.,* Notes of Testimony, 3/20/06 (N.T.), at 11 (DAMA authorized to expend public funds), 12 (DAMA identified by the Pennsylvania Department of State as a Pennsylvania municipal authority).

ments in cases such as *Commonwealth, State Ethics Comm'n v. Baldwin*, 498 Pa. 255, 445 A.2d 1208 (1982). *See In re Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146, 148–49 (1993) (opinion announcing the judgment of the Court).[2] In *Cioppa*, we discerned in the legislature's amendment to the Ethics Act, *see* Act of June 26, 1989, P.L. 26, No. 9, § 1, its intent to render unequivocal the consequence of a candidate's failure to file a Statement "in accordance with the provisions" of the Act, and found the "fatal defect" language added to then section § 404(b)(3) to be "clear and unambiguous." *Id.* (quoting 65 Pa.C.S. § 404(b)(3), now 65 Pa.C.S. § 1104(b)(3)).[3] In the years since, the legislature has made no effort to alleviate the more severe effects spawned by the decisions of the Commonwealth Court and this Court in the wake of the 1989 amendments and *Cioppa*, even when those cases set aside nomination petitions due to omissions from timely but incomplete Statements. *See In re Nomination Petition of Braxton*, 583 Pa. 35, 874 A.2d 1143 (2005) *(per curiam )* (undisclosed income); *In re Nomination Petition of Katofsky*, 582 Pa. 557, 872 A.2d 1196 (2005) *(per curiam )* (same); *In re Nomination Petition of Anastasio*, 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam*, 573 Pa. 512, 827 A.2d 373 (2003) (same). *But see In re Petition of Benninghoff*, 578 Pa. 402, 852 A.2d 1182, 1189 (2004) (Castille, J., concurring) (interpreting the 1989 amendments as requiring application of the "fatal defect" rule only to untimely financial interest statements).[4]

**2.** In *Cioppa*, Chief Justice Nix authored the opinion announcing the judgment of the Court. Then–Justice Cappy concurred in the result, and Justice Papadakos authored a concurring opinion joined by Justice Larsen. Justices McDermott and Zappala did not participate in the decision.

**3.** The language of § 1104(b)(3) does not differ materially from that of former § 404(b).

**4.** In *Benninghoff*, Mr. Justice Castille interpreted *Cioppa* as signaling that the only fatal defect is timeliness. 852 A.2d at 1192 (Castille, J., concurring) ("Given the occasion for the amendment [to the Ethics Act], I would conclude that fatal defects are limited to **untimely** filings." (emphasis in original)). I do not read the Court's decision in that case so narrowly, though certainly it was couched in terms of the issues of timeliness that then faced this Court. To the extent the opinion announcing the judgment of the Court in *Cioppa* was correct that the

While our interpretive function sometimes requires us to attend to structural cues and the larger picture of a statutory scheme in discerning legislative intent, the Majority crosses the fine line that separates this salutary approach from disregarding the letter of the law in pursuit of its spirit. The Majority finds support for its exclusive focus on a candidate's financial entanglements from the Act's statement of purpose, which, as the Majority appropriately notes, is steeped in language emphasizing the importance of full financial disclosure. *See* 65 Pa.C.S. § 1101.1(a) ("Purpose"). In section 1101.1(c) ("Legislative intent"), however, the legislature charges the independent State Ethics Commission (Commission) with "promoting public confidence in government," a mandate that I read to encompass more than mere oversight of a candidate's financial interests. For example, our legislature under the same title has deemed it necessary to preclude a party from holding certain offices contemporaneously, *see* 65 P.S. §§ 1, *et seq.* (enumerating "incompatible" offices), and has barred "subversive" persons from holding Commonwealth office. *See* 65 P.S. §§ 211, *et seq.* While these provisions do not appear in the Chapter before us, they illustrate the legislature's cognizance of the danger of attending only to a candidate's financial interests when assessing his candidacy, or, alternatively, going through the motions of requiring other disclosures but providing no sanction sufficient to deter noncompliance.

The Majority acknowledges that § 1105(b)(1) differs in its emphasis on identifying information from §§ 1105(b)(2)-(10), which require a candidate to divulge information explicitly directed at revealing nascent financial conflicts of interest. Maj. Op. at 586 Pa. 640, 896 A.2d at 575 (acknowledging that "subsection (1) is unlike the other subsections in 1105(b) in that it does not address matters that necessarily involve

legislature intended to clarify the Ethics Act in favor of more stern consequences in the wake of our decision in *Baldwin*, it could have specified that only untimeliness in filing a Statement would constitute a fatal defect. To the contrary, however, the Act's amended language emphasized that a fatal defect would be found for failure to file a Statement "in accordance with the provisions" of the Act, a far more sweeping proposition than that espoused by Mr. Justice Castille.

financial information"). Nevertheless, the Majority finds in the larger statute evidence that this particular provision is directed not at candidates for public office, but rather at career public employees whose "public positions" are a form of identifying information and who also are required to file annual Statements. In order to take the statute at face value and require that candidates for public office disclose a "public position" regardless of whether the position is compensated, the Majority argues, requires viewing § 1105(b)(1) in "splendid isolation from the rest of the Act." Thus, it concludes that "[a] reasonable person interested in seeking public office who consulted the statute, the Commission's form, and its accompanying instructions—all of which speak in terms of financial interests—could reasonably understand the subsection (1) requirement to apply only to those 'positions' necessary to identify the candidate, the office he seeks, and his **financial** interests." Maj. Op. at 586 Pa. 641, 896 A.2d at 576 (emphasis in original).[5] This reading fails, however, to give real effect to the term "public position" in the context of § 1105(b)(1) in violation of our interpretive mandate. 1 Pa.C.S. § 1921(b).

The Majority maintains that a contrary reading would lead to an absurd result unintended by the legislature. To this end, the Majority adopts wholesale Appellant's doomsday scenario: that to require disclosure of his position with DAMA, a "position" he does not dispute is "public" for purposes of the Ethics Act,[6] would be tantamount to requiring disclosure of positions such as "President of the Parent Teachers Association, Treasurer of the Township Youth Soccer Program, Chair of a church committee, and a myriad of others." Brief for Appellant at 10; see Maj. Op. at 586 Pa. 642, 896 A.2d at 577 (noting that "[t]hese associations simply reflect active lives of good citizenship," and finding "disproportionate" the "conse-

---

**5.** This "could reasonably understand" formulation, it bears noting, is inconsistent with Pennsylvania courts' prior indifference to whether a candidate's failure to make a mandatory disclosure was in good faith. *See In re Nomination Petition of Braxton,* 874 A.2d 1143 (Pa.2005); *In re Nomination Petition of Anastasio,* 820 A.2d 880 (Pa.Cmwlth.2003), *aff'd per curiam,* 573 Pa. 512, 827 A.2d 373 (2003).

**6.** *See supra* n. 1 and accompanying text.

quence of denying a candidate the right to run for office [for] failure to disclose a public 'position' which does not involve the candidate's financial interests").

Candidate's litany, however, is a strawman argument to the extent that it is any argument at all. No positions in the above list would be interpreted by reasonable people as "public positions" for purposes of the statute. To find otherwise would require disregarding the narrower definition of "public" manifest in the Act's full title and its definitional section. *See* 65 Pa.C.S. § 1101 (identifying the statute as the "Public Official and Employee Ethics Act"); § 1102 (defining a "public official" as "[a]ny person elected by the public or elected or appointed by a governmental body or an appointed official in the executive, legislative or judicial branch of this Commonwealth or any political subdivision thereof" and "public employee," in relevant part and with exceptions immaterial to this discussion, as "[a]ny individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a nonministerial nature").[7] Informed by these definitions, we can conclude at a minimum that a "public position" is one intimately involved with the functions of state or local government.[8]

To the extent the Act is less than clear, I would look to the Form promulgated by the Commission in satisfaction of its express statutory responsibility, 65 Pa.C.S. § 1105(a), which effectively manifests its administrative interpretation of the Act. In block 4, the Form requires disclosure of "PUBLIC

7. Notably, the Act's definition of "public official" does not require that the official be compensated.

8. I share the Majority's concern that an overbroad definition of "public position" will simultaneously impose a potentially onerous burden on the most civically active candidates for office, and might leave parties acting in good faith vulnerable to specious challenges. As noted, *infra*, I believe that the distinction drawn by the Commission between "public position" and "public office" is material, and consistently with the Ethics Act requires disclosure of the position here at issue. I also note, however, that the Act already contains the seeds of much mischief in its broad definition of "public official." Perhaps, to the extent the result reached herein does not reflect legislative intent in either direction, the General Assembly will clarify the disclosures necessary to strike a fair balance between ballot access and transparency.

POSITION OR PUBLIC OFFICE (member, Commissioner, job title, etc.)," and the accompanying instructions provide as follows:

> Please check the appropriate block (seeking, holding, held) for each position you list in the blocks below. List all of the public position(s) which you are seeking, currently hold or have held in the **prior** calendar year, Please be sure to include job titles and official titles such as "member" or "commissioner" (even if serving as an alternate/designees).

Maj. Op. at 586 Pa. 627 n. 3, 896 A.2d at 578 n. 3 (emphasis in original). "[A]n administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to substantial deference." *Borough of Pottstown v. Pennsylvania Mun. Retirement Bd.*, 551 Pa. 605, 712 A.2d 741, 744 (1998); *see* 1 Pa.C.S. § 1921(c). Of course, where an administrative interpretation of a statute is inconsistent with the statute itself, or where the statute's meaning is unambiguous, administrative interpretations carry little or no weight. *Pottstown*, 712 A.2d at 744; 1 Pa.C.S. § 1921(c). In the instant case, however, either § 1501(b)(1)'s requirements are not clear on their face and are clarified by the Ethics Commission's uncomplicated reiteration on the Form and its accompanying instructions of the requirement that candidates disclose "public position[s]" without regard to whether the positions are compensated, or the statute is unambiguous and means precisely what it says—that a candidate's "public position[s]," like his name and address, are disclosures required by the Act.

The Form and accompanying instructions also resist the Majority's attempt to limit the "public position" language to apply only to "public employees," its only effort at giving effect to the language. The instructions' express requirement that a signatory detail not only positions currently held but those formerly held during the prior year seldom will apply to public employees filing the Form for purposes of continuing employment.[9] Moreover, the statute clearly identifies public

9. Admittedly, the Act envisages circumstances where former public employees will file such a form. *See* 65 Pa.C.S. § 1104 (requiring a

*employees* as such, and we should not read "public position" to apply only to those individuals picked out by another, specifically defined term. *See* 65 Pa.C.S. § 1102 (defining "public employees").[10] The Form calls for the disclosure of any "PUBLIC POSITION OR PUBLIC OFFICE," and notes parenthetically that these include "member" and "Commissioner," but does not require that these be compensated, a circumstance necessitated by the definition of "public employee." *See id.* Reading these terms in a commonsense fashion and in tandem with the statutory language they effectuate, it is difficult not to conclude that the Commission envisaged the disclosure of more than mere paying public positions.

I think it far less absurd to interpret 65 Pa.C.S. § 1105(b)(1) consistently with the Commission to require disclosure of any "public position" held in the year preceding execution of the Form. The Majority's reading of § 1105 effectively reduces the plain language requirement that candidates for public office disclose any "public position" to mere surplusage, an untenable result where an equally reasonable construction of the Act gives substantial effect to that term and all others. I detect no harm in the prospect that the statute should be construed in a way that dictates broader disclosures from prudent candidates for office; certainly, the reading advanced herein is neither absurd nor incapable of execution. Moreover, this reading has the virtue of flowing directly from, and effectuating word by word, the Act's plain language.

Even if our ruling were to prod candidates to read the Act overinclusively, little obvious harm would descend from additional disclosures, the burden of which would be offset by the benefit to the electors both in knowledge of whom they are electing and in their confidence that the Commonwealth privileges the sort of transparency the Ethics Act plainly is designed to enhance. For the same reasons, no serious

public official or employees to file a Statement by May 1 of the year after he leaves a covered position).

10. For the same reason, I do not believe our ruling with regard to the term "public position" bears on the meaning of "public official," which, as noted, *supra* n. 7, is defined broadly by the Act.

candidate would be deterred by the prospect of such disclosures. Regardless, I believe that to err in favor of disclosure especially of public positions held by a candidate best reflects legislative intent, *see* 65 Pa.C.S. § 1101.1(b) (recognizing the often myriad civic and public involvements of candidates for public office, but underscoring the legislature's intent "to foster maximum compliance with [the chapter's] terms"). Especially in light of the 1989 amendments to the Ethics Act, only a far more strained reading could conclude that the legislature intended candidates to parse the statute narrowly to minimize disclosure of public and private involvements that might bear on a candidate's fitness for office (and intended courts to err in favor of less than forthcoming candidates) based upon overly formal readings of the disclosure statute. Indeed, I find it perversely contrary to manifest legislative intent to encourage candidates to err on the side of nondisclosure.

In sum, I believe any reasonable candidate reading the Ethics Act in conjunction with the Commission's Form, both of which require the disclosure of any "public position," would in prudence disclose a position like Candidate's board membership with DAMA. In failing to do so, Candidate violated the letter and the spirit of the Act.[11] For the foregoing reasons, I

11. My resolution of this issue would leave open the possibility that the "substantial compliance" exception carved out by this Court in *In re Nomination Petition of Benninghoff*, 578 Pa. 402, 852 A.2d 1182 (2004), and distinguished by the Commonwealth Court in this case, would excuse Candidate's nondisclosure in this case. Although he opined that his appointment to the board of DAMA by the Dallas Borough Council occurred only in virtue of his office as Mayor, Candidate conceded that the position was neither a direct nor a necessary consequence of that office. *See* N.T. at 24 (acknowledging that the appropriate representative to DAMA was not necessarily the Mayor, but rather "whoever council would appoint," and that his position as Mayor did not "mandate that [he] serve with a municipal authority," and that he could have turned the appointment down). Thus, *contra* our ruling in *Benninghoff*, the face of the Candidate's form neither expressly revealed his position on the board of DAMA nor justified even the most astute reader in inferring, without more, that one necessarily entailed the other. *Benninghoff* is distinguishable and should afford Candidate no quarter from the consequences of his non-disclosure.

would affirm the Commonwealth Court's ruling. Thus, I dissent.

Justice BALDWIN joins this Dissenting Opinion.