In the Matter of Nomination Petition of Charles **WILSON**, Candidate for School Board of the West Chester School District in the Democratic Primary for a Four Year Term.

Samuel C. Stretton, Appellant.

In the Matter of Nomination Petition of Charles Wilson, Candidate for School Board of the West Chester School District in the Republican Primary for a Two Year Term.

Steven K. Handzel, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 21, 1999.

Decided April 26, 1999.

Samuel C. Stretton, West Chester, for appellants.

Joseph P. Green, Jr., West Chester, for appellee.

Before COLINS, President Judge, DOYLE, J., and FRIEDMAN, J.

FRIEDMAN, Judge.

Before us for consideration are the consolidated appeals of Steven K. Handzel and Samuel C. Stretton (together Appellants) from an order of the Court of Common Pleas of Chester County (trial court), which dismissed Appellants' respective petitions to set aside the nomination petitions of Charles Wilson, a candidate for the office of school director in the West Chester Area School District. We reverse.

Wilson filed nomination petitions to be a candidate for the School Board of the West Chester School District (School District) as both a Democrat and Republican. On March 15, 1999, Appellants, also candidates for the school board seats, filed ·timely petitions to set aside Wilson's nomination petitions on the ground that Wilson failed to timely file his "Statement of Financial Interest with the West Chester School Board as required by ... 65 P.S. 404(b)." [1] (R.R. A–21, A–25, A–35, A–39.) Appellant Stretton, a Democrat, challenged Wilson's nomination petition to be on the ballot for the four-year seat in the Democratic primary. (R.R. A–25.) Appellant Handzel, a Republican, challenged Wilson's nomination petition to be on the ballot for the two-year seat in the Republican primary.[2] (R.R. A–38 to A–39.)

When Appellants filed their petitions to set aside Wilson's nomination petitions, they each attached a draft Notice of Hearing, as well as a draft order regarding service, to be signed by the trial court. (R.R. A–22, A–23, A–35, A–36.) On March 15, 1999, the trial court, *"per curiam,"* filled in the blanks on the draft Notices of Hearing, scheduling hearings on the challenges for March 25, 1999. (R.R. A–21, A–35.) However, the trial court did not sign or fill in the blanks on the draft orders regarding service, which were attached to Appellants' petitions to set aside. The draft orders, if signed, would have provided for the petitions to be "personally served on Charles Wilson, the candidate, or an adult member of his family...." (R.R. A–22, A–36.) At 1:00 p.m. on March 17, 1999, Appellants served Wilson by leaving a copy

---

**1.** The Public Official and Employee Ethics Act, Act of October 4, 1978, P.L. 883, *as reenacted and amended,* June 36, 1989, P.L. 26, 65 P.S. § 404(b)(2), provides:

Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last *day* for filing a petition to appear on the ballot for election. A copy of the statement of finan-cial interests shall also be appended to such petition.

**2.** Wilson had originally filed four nomination petitions. However, after Appellants challenged his petitions, Wilson withdrew his nomination petitions for the two-year seat in the Democratic primary and the four-year seat in the Republican primary, leaving Appellant Stretton's challenge of the four-year seat in the Democratic primary and Appellant Handzel's challenge of the two-year seat in the Republican primary.

of the court documents with Wilson's co-worker, Suzette Lotz,[3] at Wilson's place of employment, Penn Tank Lines. (S.R.R.[4] 31a, 41a.)

At the March 25, 1999 hearing, Wilson did not appear personally; however, he was represented by counsel. Wilson's counsel presented the court with a motion to dismiss on the basis that Appellants' petitions to set aside, challenging his nomination petitions, were improperly served upon him. (S.R.R. 78a–82a.) Specifically, Wilson contended that the service failed to comply with section 977 of the Election Code[5] (Election Code) in that Appellants "never sought or secured an [o]rder to determine 'the time and manner of notice ...'" to be given to Wilson.[6] (S.R.R. 79a.) Wilson's counsel asked the trial court to take judicial notice that, in six unrelated challenges filed in 1999, the Court Administrator signed the order regarding the manner of service at the behest of those petitioners' attorneys and that here Appellants' attorney did not ask the Court Administrator to sign the manner of service orders. (S.R.R. 13a.)

In response, Appellants argued that they properly served Wilson with their petitions to set aside, because, in accordance with local procedure, they presented the draft orders regarding service to the court administrator at the time they filed their petitions to set aside.[7] (S.R.R. 8a, 11a.) Noting that the burden of ensuring proper service is on the petitioner, the trial court stated that, as petitioners, Appellants had "the choice of going to see the Court Administrator or [had] the choice of coming and seeing a judge...." (S.R.R. 12a.) But Appellants did neither. Accordingly, by order of March 26, 1999,[8] the trial court dismissed Appellants' petitions to set aside Wilson's nomination petitions on the ground that Appellants had "failed to secure an order of Court to provide for adequate and lawful service to the candidate pursuant to 25 P.S. § 2937...." (S.R.R. 84a–86a.) This appeal followed.[9]

Appellants challenged Wilson's nomination petitions based on his failure to properly file his financial interests statement. A candidate's failure to timely file a financial interests statement in the proper manner and in the prescribed time with the local governing authority is a fatal defect requiring the striking of that candidate from the ballot even where, as here, the candidate properly and timely filed the statement with the county election authority. *See Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146 (1993). Because it is undisputed that Wilson did not timely file his financial interests statement with the school board secretary,[10] (*see* S.R.R. 16a), the only issue is whether, because no order specifying the manner of service was

3. The return of service indicated that Lotz was Wilson's secretary. (S.R.R. 31a, 41a.) However, at the hearing before the trial court, Wilson's counsel stated that Lotz was not a secretary, but a billing clerk. (S.R.R. 6a.)

4. S.R.R. refers to Appellee Charles Wilson's Reproduced Record which, pursuant to Pa.R.A.P. 2186(b), is the Supplemental Reproduced Record.

5. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

6. In his consolidated motions to dismiss, Wilson also stated that he timely filed his statement of financial interests with the County Voter Services office and subsequently filed the statement with the School District. (S.R.R.80a.)

7. Appellants further argued that, where the courts found improper service, they did so because the petitioners had failed to comply with a court order. (S.R.R. 12a.)

8. That order mistakenly identified the docket numbers as 99–02134 and 99–02136. By order of March 31, 1999, the court modified its order to reflect the proper docket numbers as 99–02133 and 99–02134.

9. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Petition for Referendum on Question of Amending Pittsburgh Home Rule Charter*, 660 A.2d 184 (Pa.Cmwlth. 1995).

10. Pauline A. Bachtle, Board Secretary to the School District, testified that the deadline for candidates to timely file their statements of financial interest was March 9, 1999 and that Wilson did not file his statement by that date. (S.R.R. 15a, 16a.) She further testified that Wilson filed his statement, six days late, on March 15, 1999. (S.R.R. 16a.) On cross-examination, Wilson's counsel educed that both Appellants filed timely financial interest statements with the School Board secretary. (S.R.R. 17a, 18a.)

ever entered, the trial court was required to dismiss Appellants' challenges.

Section 977 of the Election Code provides that the trial court "shall make an order ... specifying the time and manner of notice that shall be given to the candidate ... named in the nomination petition ... to be set aside." In this appeal, Appellants contend that they complied with that provision when they filed a draft order with their challenges and that they should not be punished because of the trial court's failure to sign the draft order. Appellants further contend that section 977 is directory; thus, the trial court's failure to enter the prescribed order is not fatal to their challenges. In contrast, Wilson asserts that the statute is mandatory, and it was incumbent upon Appellants to ensure that the trial court entered an order specifying the manner of service. Wilson further argues that dismissal is required where the candidate or a family member is not personally served. We agree with Appellants that section 977's provisions relating to the exercise of judicial functions are directory and not mandatory. *In re Moore,* 447 Pa. 526, 291 A.2d 531 (1972); *In re Objections to Nomination Papers of "Socialist Labor,"* 332 Pa. 78, 1 A.2d 831 (1938). Because section 977's language directing the trial court to enter an order specifying the time and manner of service is directory, the fact that the trial court did not enter such an order is not fatal to Appellants' challenges because Wilson had timely and actual notice of the hearing.

Moreover, it is not claimed that Appellants failed to present the draft orders with their petitions to the court. Indeed, if Appellants' paperwork was incomplete or in improper form, the trial court could have rejected Appellants' petitions as filed, but the trial court did not do so. Instead, it accepted Appellants' paperwork as filed and set a hearing date on Appellants' petitions. That the trial

court did not sign the manner of service order appears to have resulted from nothing more than an inadvertent oversight on the part of the trial court.

Although the trial court made no finding as to whether Wilson received actual notice of the hearing, it is obvious from the record that Wilson did in fact have actual notice. Although Wilson did not personally appear at the hearing, his attorney did appear and was prepared to represent Wilson's interests. The evidence at the hearing established that Appellants served Wilson's co-worker eight days before the hearing. Wilson's counsel never claimed that the co-worker did not promptly give that notice to Wilson. Nor did Wilson's counsel assert that Wilson suffered any prejudice as a result of the service in this case. Therefore, a remand to the trial court to determine that Wilson in fact received actual notice would serve no purpose.

■ Wilson also contends that Appellants' failure to personally serve him or a family member requires dismissal of Appellants' challenges. However, section 977 of the Election Code merely requires that Appellants serve Wilson with notice of the hearing according to the time and manner specified in the trial court's order. Here, because the trial court did not enter an order specifying the time or manner of service, Appellants' method of serving Wilson did not violate a court order.[11]

■ Although we have sanctioned service made personally on the candidate or a family member in cases brought under section 977 of the Election Code, we have not required such service in all cases. *See, e.g. In re Morgan,* 59 Pa.Cmwlth. 161, 428 A.2d 1055 (1981). Section 977 gives the trial court "complete control to regulate the time and manner of giving notice...." *Id.* at 1058. Because of the short time allotted for hearing

11. We also note that Appellants' service on Wilson comported with Pa.R.C.P. 402(a)(2)(iii) regarding service of original process in civil cases. That rule permits service by handing a copy of the documents "to the person for the time being in charge" of the party's office or usual place of business. We recognize that the Rules of Civil Procedure regarding service are not applicable to challenges to nomination petitions brought pursuant to section 977 of the Election Code. *See In re Morgan,* 59 Pa.Cmwlth. 161, 428 A.2d 1055 (1981). However, where the trial court has not specified the manner of personal service under section 977 of the Election Code, we may look to the Rules of Civil Procedure for guidance with respect to the appropriateness of the service. *See id.*

challenges to nomination petitions, we have expressed our concern that candidates whose petitions are challenged be "quickly and surely notified." *See id.* Here, although Appellants did not personally serve Wilson or a family member, Wilson was in fact "quickly and surely notified" of the hearing date and time.[12]

 Wilson also argues that the trial court's dismissal of the challenges furthered the Commonwealth's "strong policy in favor of enfranchisement ..." because he properly filed his statement with the County Voter Services office and eventually, although belatedly, filed the statement with the School District. (Appellee's Brief at 9.) However, the requirement to file a timely statement of financial interests is "particularly important" and "unwaivable." *In re Petition to Set Aside Certain Nominating Petitions for Office of Lower Moreland Township School Director,* 657 A.2d 1382, 1384 (Pa.Cmwlth.), *aff'd sub nom. Heerin v. Friedenberg,* 541 Pa. 645, 663 A.2d 696 (1995). Failure to file a timely financial interests statement "warrants automatic disqualification as a candidate" and "can be a grounds for precluding the taking of office or receiving compensation." *Id.*

Because section 977's direction to the court to specify the time and manner of service on a challenged candidate is directory and because Wilson had timely actual notice of the hearing, the trial court erred in dismissing Appellants' challenges. Additionally, because the record reveals that Wilson failed to timely file his statement of financial interests with the School Board, Wilson's name may not appear on the primary ballots.

### ORDER

AND NOW, this 26th day of April, 1999, we enter the following order:

1. The order of the Court of Common Pleas of Chester County, dated March 26, 1999, and modified on March 31, 1999, dismissing Appellants' Petitions to Set Aside the Nomination Petitions of Charles Wilson, is reversed.

2. Appellants' Petitions to Set Aside the Nomination Petitions of Charles Wilson are granted.

---

12. In other contexts, we have held that strict compliance with a notice requirement is not required where the answering party has actual notice. *See, e.g., In re Commonwealth, Department of General Services,* 714 A.2d 1159 (Pa. Cmwlth.1998), in which we found actual notice to a condemnee of land sufficient despite defective service.