## Clarke v. Valley Forge Sheraton

C.P. of Montgomery County, no. 95-19581.

*Wayne A. Ely* and *Robert P. Murphy,* for plaintiff.
*Donna L. Adelsberger,* for defendants.

VOGEL, *S.J.,* January 12, 2001—

## FINDINGS OF FACT

(1) On March 5, 1994, plaintiff, Susan B. Clarke (now known as Susan B. Clarke-Lane), slipped, fell, and was injured on the premises controlled by defendants. Plaintiff is referred to hereafter as "plaintiff" or "Ms. Clarke." Defendants are referred to hereafter as "Valley Forge Sheraton," "the Sheraton," or "defendant."

(2) Defendant, Wyndham Hotel Company Ltd., which does business as the Valley Forge Sheraton, operates the Valley Forge Sheraton Hotel on land owned by defendant VFPA Grantor Trust.

(3) The parking lot at the Valley Forge Sheraton is terraced, with two head-in parking lanes on each level. Between each level is a grass covered slope. At approximately the center of each grass covered slope there is a set of wooden steps made of railroad ties that normally provide access to each level,

(4) There are also railroad ties located along the border of the grassy area at the front of each parking space.

(5) The railroad tie steps are regarded by the Sheraton maintenance staff as walkways, and were typically cleared of snow along with other paths and sidewalks.

(6) On March 2, 1994, it snowed in the area. The Sheraton's maintenance records show that on that date all walks were shoveled and salted. The Sheraton's groundskeeper believed the railroad tie stairways had been shoveled, but apparently were not. The blacktop area of the parking lot was also plowed.

(7) On March 5, 1994, the Sheraton's parking lot was wet and slushy in spots. These macadamed areas were essentially as clear as they could be, given the weather conditions and traffic on the lot. The grassy areas between the terraces, including the railroad tie stairways, were snow covered, and in spots had piles of shoveled snow which were placed there in clearing the parking lot.

(8) The failure to shovel these railroad tie stairs forced invitees to seek alternative routes to their vehicles.

(9) At approximately 2 p.m. on March 5, 1994, Ms. Clarke arrived by automobile at the Sheraton, with her friend, Marion R. Roth, to attend a show and sale of Indian arts and crafts.

(10) There were several other shows at the Sheraton that date. The parking lot was crowded, and cars were driving around, looking for parking spaces.

(11) The parking space used by Ms. Clarke and Ms. Roth was roughly aligned with the front door of the Sheraton, separated from it by one grassy area and an area of blacktop.

(12) Ms. Clarke and Ms. Roth entered the Sheraton by walking on the blacktop, around the snow covered grassy area.

(13) They were inside an hour to an hour and a half. Both women made purchases. Ms. Clarke bought a print that was framed and under glass. It was wrapped in brown paper and was approximately 22 by 14 inches in size. When she left the Sheraton she was carrying that print and her handbag.

(14) Rather than use the same route to return to their vehicle that they used to enter the Sheraton, Ms. Clarke and Ms. Roth took the most direct route, across the unknown snow covered grassy area, which is where the snow plows had placed the piles of snow from the parking and driveway areas. They were not aware of the snow covered steps, and did not cross at that location.

(15) Just before she completed crossing the snow covered grassy area, Ms. Clarke tripped, or caught her foot, on one of the railroad ties that bordered the grassy area, and fell.

(16) Ms. Clarke was helped to the automobile by Sheraton security personnel, and was driven to the Suburban General Hospital Emergency Room by Ms. Roth.

(17) Ms. Clarke suffered a bimalleolar fracture of the left ankle. An open reduction and internal fixation of the left ankle with a semi-tubular plate and screws was performed under general anesthesia. A cast was affixed. Ms. Clarke suffered pain and discomfort, and received physical therapy. She lost some time from her job handling

marketing and administrative matters for the architectural practice of her husband, Edward M. Lane.

(18) Ms. Clarke had an excellent recovery, although she continues to suffer from occasional pain, and testified that she no longer dances or plays golf.

(19) As discussed more fully below, defendants breached their duty to plaintiff to clear the railroad tie stairways between the terraces of the parking lot, and this breach was a 50 percent causal factor of the harm suffered by plaintiff.

(20) As discussed more fully below, plaintiff also had a duty to exercise due care for her own safety, which she breached by proceeding across a piled snow covered area without knowledge of what was under the snow rather than utilizing the route she used to enter the Sheraton. This breach was a 50 percent causal factor of the harm she suffered.

(21) Plaintiff sustained damages in the amount of $80,000 as a result of the accident.

## DISCUSSION

Possessors of land owe a duty to protect invitees from foreseeable harm, but not where the danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite that knowledge or obviousness. *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983). The possessor does not have a duty to insure that the premises are ice free. *Morin v. Traveler's Rest Motel Inc.,* 704 A.2d 1085 (Pa. Super. 1997), *allocatur denied,* 555

Pa. 708, 728 A.2d 1025 (1998). Nevertheless, we find this case is unlike *Gilligan v. Villanova University,* 401 Pa. Super. 113, 584 A.2d 1005 (1991), and other cases cited by the plaintiff, which hold that possessors do not have the duty to clear grassy areas.

Not every possessor of land is obligated to clear every sidewalk or pathway, but under the circumstances of this case we find that the Sheraton had a duty to its invitees to keep the stairways between the terraces clear within a reasonable time after the snowfall. This arises from the length of the grassy areas between the terraces, and the generally busy nature of this parking lot that would cause invitees to take shortcuts across the grass. Clearing the railroad tie stairways would provide a safer route for those people. Indeed, the Sheraton recognized that duty and normally removed snow from those stairways. Its groundskeeper believed that they had been cleared after this snowfall. The Sheraton's failure to perform this duty compelled this invitee to seek an alternative route.

We find no Pennsylvania case precisely on point, but note the decision in *Kantorowicz v. VFW Post #230,* 349 N.W.2d 597 (Minn. App. 1984). The Legion Post had a parking lot that was not contiguous to the lot where its building stood. The Post was elevated from the lot and sidewalk. On the night of the accident there were three paths worn in the snow on the embankment leading to the sidewalk which led to the Legion Post's entrance. Plaintiff chose one of those paths rather than the alternative of using a fairly busy street that would have led to the same sidewalk entrance. A verdict finding both the plaintiff and the Legion Post negligent was upheld.

Ms. Clarke was also negligent. She failed to use the obviously safer but longer route she had employed to enter the Sheraton. Instead, burdened with a package and her handbag, she chose the shortest route, through the snow, with no idea what was under it. Pedestrians who choose a snow covered route rather than a safe one can be guilty of negligence which contributes to their harm. See *Dwyer v. Port Allegheny Borough,* 216 Pa. 22, 64 A. 854 (1906); *Rothacker v. Philadelphia,* 42 Pa. Super. 408 (1910); *Gilligan v. Villanova University,* 401 Pa. Super. 113, 584 A.2d 1005 (1991).

In this case we considered the percentage of causal negligence to be equal on the part of the plaintiff and defendants, entitling plaintiff to an award of 50 percent of the total damages we found she suffered as a result of this accident.

## CONCLUSIONS OF LAW

(1) Under the circumstances of this case, defendants owed to plaintiff a duty to clear the stairways connecting the terraced levels of the parking lot, which they breached.

(2) Under the circumstances of this case, plaintiff had a duty to proceed along a known, safe route, rather than through the snow, which she breached.

(3) The causal negligence of plaintiff and defendants contributed in equal measure to the happening of this accident.

(4) Under Pennsylvania's Comparative Negligence Law, plaintiff is entitled to an award of $80,000, however, due to her comparative negligence, a net award in the sum of $40,000.