# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Best Courier, : 
  Petitioner : 
  : 
  v. : No. 1460 C.D. 2018
  : Submitted: May 6, 2019
Department of Labor and Industry, : 
Office of Unemployment Compensation : 
Tax Services, : 
  Respondent : 

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COHN JUBELIRER                              FILED:  October 23, 2019

Best Courier petitions this Court for review of the Department of Labor and Industry's (Department) September 27, 2018 Final Order denying Best Courier's Petition for Reassessment after concluding it was untimely filed and Best Courier did not demonstrate that it was entitled to *nunc pro tunc* relief.  On appeal, the sole issue raised by Best Courier is whether the Department erred in concluding Best Courier did not meet its burden of showing it was entitled to *nunc pro tunc* relief. Because equitable relief in the form of an appeal *nunc pro tunc* is reserved for extraordinary circumstances, *Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001), which are not present here, we affirm.

On June 28, 2016, the Department's Office of Unemployment Compensation Tax Services (OUCTS) issued a Notice of Assessment (Notice) to Best Courier in

the amount of $27,555.39 for unemployment compensation employer and/or employee contributions, interest, and penalties for 2015 and the first quarter of 2016. (Reproduced Record (R.R.) at 21a-32a.) The Notice was mailed to Best Courier at 322 Northshore Drive, Pittsburgh, PA 15212 via first class and certified mail. (*Id.* at 21a.)

On July 27, 2016, Best Courier filed a Petition for Reassessment, alleging the individuals identified in the Notice are independent contractors not employees of Best Courier. (*Id.* at 35a.) In a cover letter accompanying the Petition for Reassessment, Best Courier acknowledged that it only had 15 days to seek reassessment, but claimed the Notice was received by an individual who "was neither an employee nor an agent of Best Courier." (*Id.* at 34a.) The cover letter further stated that individual "is an attendant of the building that is rented by Best Courier, among other entities" and that the owner of Best Courier "first learned of the Notice . . . today." (*Id.*)

By letter dated November 7, 2016, an appeals docket clerk for the Department's Unemployment Compensation Tax Review Office indicated that "a jurisdictional issue . . . ha[d] been identified which must be decided before the merits may be reached" and directed the parties to exchange exhibits, including "those materials related to the mailing and/or receipt of the . . . [N]otice." (*Id.* at 37a.) The letter noted that the Petition for Reassessment was filed more than 15 days from the Notice. (*Id.*) The letter continued "[i]n the interest of administrative efficiency and to otherwise avoid an undue delay, the parties should consider and include in their respective distributions information relevant to the timeliness of the Petition for Reassessment, as well as the merits of that appeal." (*Id.*)

Best Courier submitted a Declaration from its president, Roy Calabria, Jr. The Declaration stated Mr. Calabria received the Notice on July 27, 2016, and immediately upon receipt, he contacted counsel who assisted with preparing the Petition for Reassessment. (*Id.* at 41a-42a.) The Declaration also stated:

> [a]lthough OUCTS's [Notice] is dated June 28, 2016[,] and is addressed to Best Courier at 322 North Shore Drive, that address is office space that Best Courier has rented but which is not staffed on a daily basis. Someone other than me or an authorized representative of Best Courier signed for receipt of the [Notice].

(*Id.* at 41a.)

A Notice of Hearing was issued on June 13, 2018. (*Id.* at 295a.) One week later, OUCTS filed a Motion to Dismiss seeking dismissal of the Petition for Reassessment on the ground it was untimely filed and a stay of the appeal on the merits until the Motion to Dismiss was decided. (*Id.* at 302a-04a.) Best Courier filed a Brief in Response to the Motion to Dismiss, arguing it was entitled to *nunc pro tunc* relief. (*Id.* at 310a-15a.) By order dated July 23, 2018, the hearing on the merits was continued pending disposition of the Motion to Dismiss. (*Id.* at 322a-23a.) The order further noted that the Motion to Dismiss would be deemed denied if not acted upon within 30 days. (*Id.* at 323a.)

Although the Motion to Dismiss was not acted upon within that time frame, the Final Order was issued on September 28, 2018, denying the Petition for Reassessment as untimely.[1] In the Final Order, the Department noted that, pursuant to Section 304(b) of the Unemployment Compensation Law[2] (UC Law), a

---

[1] Because timeliness of an appeal is a jurisdictional issue, the Department contends it could raise the issue sua sponte even after the 30 days had lapsed. Best Courier does not challenge the Department's authority to issue the Final Order.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 784(b). Section 304(b) provides: "Any employer against whom an assessment is made may,

3

challenge to an assessment must be filed within 15 days and here, the Petition for Reassessment was filed after that time period expired. The Department also noted that Best Courier **did not claim the address to which the Notice was sent was incorrect** or that it was not received.[3] The Department acknowledged the Declaration submitted by Best Courier's president that the office space is rented and not staffed daily, but found Best Courier "must bear the risk of any failure that may result from its decision not to staff that location daily, and the apparent irregularity this causes in its checking on mailings sent to this address." (Final Order at 8.) The Department further found that Best Courier focused on the certified mailing, but neglected to address the Notice also being mailed via first class mail, which was presumed received. (*Id.* at 9, 14.)

As for the certified mailing, the Department found it noteworthy that Best Courier did "not represent or otherwise intimate that the building attendant's acceptance of the mail was inappropriate, atypical, or otherwise unexpected," nor did Best Courier "allege that it informed the management of the rented office space not to sign for mail." (*Id.* at 8-9.) According to the Department, Best Courier "simply failed to adjust its operations or otherwise make alternate provisions to ensure it could act promptly upon time-sensitive communications." (*Id.* at 9.) The Department found Best Courier's "internal procedures did not adequately and

---

**within fifteen days after notice thereof,** petition the department for a re[]assessment. . . ." *Id.* (emphasis added).

[3] In fact, the Department stated in the Final Order that one month earlier, Best Courier appealed from another assessment, which had been mailed **to the same address**; Best Courier listed Northshore Drive as the return address on the envelope in which that appeal was contained; and 18 of the Form 1099-MISCs issued by Best Courier in the record reflects this address. (Final Order at 7.) A copy of that envelope appears in Certified Record Item No. 4 and is labeled Exhibit OUCTS 5. The 18 Form 1099-MISCs were introduced by Best Courier and appear in the Reproduced Record at 92a-109a.

4

reasonably provide for, among other things, contingencies when it did not have an officer or other staff member present in [the] office." (*Id.* at 9 n.11.) To the extent Best Courier "attempt[ed] to distance itself from the 'attendant of the building'" by asserting the attendant was not Best Courier's agent, the Department was not persuaded, noting the building attendant was not "an entirely 'disinterested third party.'" (*Id.* at 10, 11 n.14.) The Department stated:

> [Best Courier] controlled the manner by which it would receive mail. [Best Courier] knew, or should have known, that mailings would be sent to the undisputed address of record, at least some of which could be time-sensitive and/or require recipient acknowledgment (such as the [a]ssessments sent by certified mail in the case at hand). [Best Courier] also knew, or should have known, that having an irregular presence at the office that is its undisputed address of record could cause disruptions in mailings and/or necessitate, in the absence of specified alternate arrangements, others to act on its behalf in regard to mailings to such address (such as the building attendant).

(*Id.* at 13.) In short, the Department concluded Best Courier's own negligence was the reason for the late filing and, accordingly, Best Courier was not entitled to *nunc pro tunc* relief. This appeal followed.

On appeal,[4] Best Courier does **not** argue that the Notice was mailed to an incorrect address; rather it raises one issue: whether the Department erred in finding Best Courier was not entitled to *nunc pro tunc* relief. In support of such relief, Best Courier argues that the delay in filing its Petition for Reassessment was brief and due to non-negligent circumstances. Best Courier attributes the delay to renting office space in a common use building and someone other than its agent

---

[4] Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether petitioner's constitutional rights have been violated. *Kenneth S. Hantman, Inc. v. Office of Unemployment Comp. Tax Servs.*, 928 A.2d 448, 451 n.6 (Pa. Cmwlth. 2007).

signing for the Notice. It claims there was no negligence on its part. Best Courier also argues it met the other criteria for *nunc pro tunc* relief. Namely, Best Courier argues the sworn Declaration shows the Notice was received on July 27, 2016, which is the same day its Petition for Reassessment was filed; therefore, it acted promptly. Further, Best Courier asserts the appeal was filed a short time – just two weeks – after the appeal period ran. Finally, it claims OUCTS would suffer no prejudice in allowing the late filing. Best Courier requests that this Court reverse the Department's Final Order and remand the matter to allow it to proceed on the merits.

OUCTS responds that Best Courier's negligence is to blame for the late Petition for Reassessment. It argues the Notice was mailed to the last known address, as required, and, per the UC Law, service was completed upon mailing. It further notes that receipt of the first class mailing alone is sufficient to support denial of the Petition for Reassessment because there is no requirement that such notices be sent certified mail. OUCTS notes that Best Courier does not dispute that the address to which the first class and certified mail was sent is correct. It also claims there is a presumption of regularity of administrative acts, such that the Notice is presumed received. OUCTS asserts a petitioner must meet a heavy burden to be entitled to *nunc pro tunc* relief, and Best Courier has not satisfied that burden here. It points out that Best Courier did not staff its office daily and decided to have its mail sent there anyway, a decision which was solely within its control. Therefore, OUCTS argues Best Courier assumed the risk. Because there is no evidence of non-negligence, OUCTS asks this Court to affirm the Department's Final Order.

6

Section 304 of the UC Law sets forth the procedure governing assessments, including the manner of notice and the time period for challenging an assessment. Specifically, Section 304(a)(3) provides that "[t]he department will mail notice of an assessment to the employer's last known address . . ." and "[n]otice of an assessment by mail is complete upon mailing." 43 P.S. § 784(a)(3).[5] Section 304(b) then provides that "[a]ny employer against whom an assessment is made may, **within fifteen days after notice thereof**, petition the department for a re[]assessment . . . ." 43 P.S. § 784(b) (emphasis added). If an employer does not seek reassessment, the assessment becomes final. 43 P.S. § 784(d). Here, although there is nothing in the record indicating that the Northshore address was the last known address, Best Courier has **not alleged that the address is incorrect**. Therefore, it is undisputed that the Notice was mailed to Best Courier's correct address via both first class and certified mail. Yet, Best Courier filed its Petition for Reassessment after the 15-day period had run.

It is well established that the failure to file an appeal within the requisite time period is jurisdictional. *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008); *Dumberth v. Unemployment Comp. Bd. of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003); *Aarsand Mgmt., LLC v. Dep't of Labor & Indus., Office of Unemployment Comp. Tax Servs.* (Pa. Cmwlth., No. 1726 C.D. 2016, filed Aug. 31, 2017), slip op. at 3.[6] Our Supreme Court has cautioned that "[i]n order to perfect an appeal, parties must strictly adhere to the statutory provisions for filing an appeal." *Criss*, 781 A.2d at 1159. The deadline

---

[5] Section 304(a)(3) also provides that notice may be emailed if the employer has designated an email address and such notice is complete when sent. 43 P.S. § 784(a)(3). The parties do not allege that this provision is at issue.

[6] *Aarsand* is an unreported panel decision of this Court, which is cited in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

for filing an appeal "cannot be extended as a matter of grace or mere indulgence." *Bass v. Commonwealth of Pennsylvania*, 401 A.2d 1133, 1135 (Pa. 1979). Moreover, "[t]he burden to establish the right to have an untimely appeal considered is a heavy one because the statutory time limit established for appeals is mandatory." *Hessou*, 942 A.2d at 198.

Limited circumstances exist in which an untimely appeal may be considered. *Id.* *Nunc pro tunc* relief is a form of equitable relief that is available only "in certain extraordinary circumstances." *Criss*, 781 A.2d at 1159. Allowable exceptions include cases involving fraud, a breakdown in the administrative process, or when there is a "non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal." *Bass*, 401 A.2d at 1135-36. It is under this third exception – non-negligent conduct – that Best Courier seeks to proceed. *Nunc pro tunc* relief for non-negligent conduct is generally reserved for only those "unique and compelling cases in which the appellant has clearly established that [the petitioner] attempted to file an appeal, but unforeseeable and unavoidable events precluded [the petitioner] from actually doing so." *Criss*, 781 A.2d at 1160.

We agree with the Department that Best Courier has not met the heavy burden of showing it is entitled to *nunc pro tunc* relief. Best Courier acknowledges in its Declaration that its office is not staffed on a daily basis; yet it did nothing to ensure mail was received in a timely manner. We have refused to allow *nunc pro tunc* relief under similar circumstances in the past. In *Ho v. Unemployment Compensation Board of Review*, 525 A.2d 874 (Pa. Cmwlth. 1987), the claimant applied for unemployment compensation benefits but was denied. That decision

8

was mailed to the claimant, along with a notice that she had 15 days to appeal the decision. The claimant missed the deadline and requested *nunc pro tunc* relief, alleging she was out of the country caring for her sick mother. The claimant admitted that her husband informed her of receipt of the letter, but not its contents because he did not understand English. We affirmed the Board's order dismissing her appeal, finding the claimant was responsible for missing the deadline.

We have consistently found petitioners negligent by not making other arrangements for their mail while they were away. For instance, in *Douglas v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1903 C.D. 2013, filed July 16, 2014),[7] the claimant was out of town caring for her mother, and did not receive the determination denying her request for a waiver of overpayment until after the appeal period expired. Noting the claimant presented no evidence that she attempted to monitor her mail while away, we held she was not entitled to *nunc pro tunc* relief. *Douglas*, slip op. at 6. We reached a similar conclusion in *Vanker v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 2340 C.D. 2009, filed Dec. 22, 2010). There, the appellant, a truck driver, did not receive notice of suspension of his operating privilege because he was out of state for work. He admitted he did not make arrangements for anyone to check his mail in his absence. The trial court denied the appeal, and we affirmed, holding that the failure of appellant to have someone check his mail did not constitute non-negligent circumstances. *Vanker*, slip op. at 5; *see also King v. Workers' Comp. Appeal Bd. (Pep Boys)* (Pa. Cmwlth., No. 1796 C.D. 2007, filed Feb. 25, 2008), slip op. at 4 (holding claimant's "failure to make arrangements for retrieval or forwarding of his mail was negligent")*; Plut v. Unemployment Comp.*

---

[7] Unreported panel decisions may be cited for their persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*Bd. of Review* (Pa. Cmwlth., No. 2283 C.D. 2007, filed Oct. 14, 2008), slip op. at 7-8 (holding failure to have mail forwarded or have someone collect mail from address of record does not justify a late appeal).

Here, like in the cases cited above, Best Courier presented no evidence that it made any arrangements to monitor its mail despite knowing that its office was not staffed on a daily basis. The Notice was mailed on June 28, 2016. According to the Declaration filed by Best Courier's principal, the Notice was not received by him until July 27, 2016. Therefore, Best Courier's office was not staffed for at least a month, or else Best Courier would have received the Notice earlier. Given our precedent, in which individuals have been found negligent in similar situations, we cannot conclude that Best Courier not monitoring its mail for this lengthy of a period of time was not negligent. Best Courier assumed the risk that time-sensitive matters would be received during these periods of absence.

Nor are we persuaded by Best Courier's argument that its principal or agent had to be the one to sign for the certified letter containing the Notice, not the building attendant, who was allegedly not its agent. First, this argument does not consider that the Notice was also sent via first class mail to the undisputed proper address, and there is no evidence or suggestion that it was returned. Second, the Department did not appear to credit Best Courier's contention that the building attendant was not its agent. In the Final Order, the Department noted that Best Courier did "not represent or otherwise intimate that the building attendant's acceptance of the mail was inappropriate, atypical, or otherwise unexpected," (Final Order at 8), which, notably, Best Courier still does not contend.

In *Milford Township Board of Supervisors v. Department of Environmental Resources*, 644 A.2d 217 (Pa. Cmwlth. 1994), an order directing supervisors to file

10

an amended sewage facilities plan was mailed to the township via certified mail, which was signed for by the township's earned income officer, but not turned over to the supervisors until more than a week later. The appeal period expired before the supervisors could appeal. The supervisors argued that the earned income officer did not have authority to receive service and that the order should have been mailed via certified mail with restricted delivery. We disagreed with both premises, holding "[c]onstitutionally adequate notice of administrative action is notice which is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," which was satisfied there. *Id.* at 219. We also reiterated that "personal receipt of the notice is not required when the notice was mailed to the party's last known address." *Id.* Because the order was mailed to the correct address, we concluded that notice was constitutionally adequate regardless of whether the earned income officer had authority to receive the notice on the supervisors' behalf. *Id.* Here, it is **not disputed** that the Notice was mailed to the correct address. That the certified mail was signed for by someone other than Best Courier is of no consequence since there is no requirement that the Notice be mailed via certified mail. In addition, the Notice was also mailed via first class mail, which would not have required a signature.

If Best Courier wanted to ensure timely receipt of its mail, it could have taken steps to do so when its office was not staffed. It did not do so. In accordance with our precedent, we cannot conclude that Best Courier was not negligent by not checking its mail for a month.

11

Accordingly, Best Courier is not entitled to *nunc pro tunc* relief, and the Final Order of the Department is affirmed.[8]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] The dissent contends the 15-day timeframe in Section 304(b) is a statute of limitations and not a jurisdictional bar. However, Best Courier has not raised this argument. Its appeal is strictly limited to whether the Department erred in not accepting its Petition for Reassessment *nunc pro tunc*. Although it is true that **lack of jurisdiction** is an issue that can be raised at any time by any party or even *sua sponte* by a court, we have found no authority that an appellate court can *sua sponte* raise the **existence of jurisdiction** when a trial court or administrative agency held otherwise. If the Department erred in finding it **lacked jurisdiction**, Best Courier was required to argue it was an error of law. Otherwise, the issue is waived.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Best Courier,                  :
                 Petitioner      :
                                 :
                v.            :    No. 1460 C.D. 2018
                                 :
Department of Labor and Industry,    :
Office of Unemployment Compensation :
Tax Services,                   :
                 Respondent    :

## **O R D E R**

**NOW**, October 23, 2019, the Final Order of the Department of Labor and Industry dated September 27, 2018, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Best Courier,                              :
                    Petitioner             :
                                           :
          v.                               :    No. 1460 C.D. 2018
                                           :    Submitted: May 6, 2019
Department of Labor and Industry,          :
Office of Unemployment Compensation        :
Tax Services,                              :
                    Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: October 23, 2019

          At issue is Section 304(b) of the Unemployment Compensation Law
(Law),[1] which states that an employer "*may* within fifteen days after notice [of an
assessment] *petition* the department for a reassessment." 43 P.S. §784(b) (emphasis
added). The Department of Labor and Industry (Department) dismissed Best
Courier's petition for reassessment for the stated reason that it lacked jurisdiction
because the petition was untimely filed. The Department erred because the time
constraint in Section 304(b) states, at most, a statute of limitations that does not
implicate the Department's jurisdiction.[2] Further, because Best Courier filed a

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §784(b).

[2] This appears to be a case of first impression. In *Famularo Catering, Inc. v. Department of Labor
and Industry*, 125 A.3d 866 (Pa. Cmwlth. 2015), the Department conducted a hearing on a petition
for reassessment mailed 18 days after issuance of the notice of assessment. This would not be
possible if the Department lacked jurisdiction.

          The Department construes the time constraint in Section 304(b) as a jurisdictional
proscription that cannot be waived or modified. This construction limits the Department's

petition for reassessment on the same day it received the notice, it was not untimely. Respectfully, I dissent from the majority's decision to affirm the Department.

On June 28, 2016, the Department's Office of Unemployment Compensation Tax Services (Tax Services Office) issued an assessment notice to Best Courier. The notice stated that a number of Best Courier delivery associates, who had signed independent contractor agreements, were actually employees of Best Courier, which now owed in excess of $40,000 in payroll taxes on behalf of those "employees." On July 27, 2016, Best Courier received the notice and filed a petition for reassessment.

On August 3, 2016, the Department's Unemployment Compensation Tax Review Office (Tax Review Office) acknowledged receipt of Best Courier's petition for reassessment. On November 7, 2016, the Tax Review Office sent a letter to Best Courier and the Tax Services Office noting a "jurisdictional issue" and stating as follows:

> In the interest of administrative efficiency and to otherwise avoid an undue delay, the parties should consider and include in their respective distributions information relevant to the timeliness of the Petition for Reassessment, as well as the merits of that appeal.

Reproduced Record at 37 (emphasis omitted) (R.R. __).

Both parties submitted exhibits to the administrative law judge. The Tax Services Office's exhibits included, *inter alia*, a copy of the United States Postal Service tracking information that showed that the assessment notice was "Delivered, Left with Individual" on June 29, 2016. Certified Record (C.R.), Item 4, Exhibit 4.

---

discretion. It deprives the Department of the ability to enter a tolling agreement while it negotiates a settlement. By contrast, a statute of limitations, while enforceable, can be waived.

This unnamed individual did not sign the certified mail receipt. Best Courier submitted, among other things, a declaration of Roy Calabria, Jr., the president of the company, which stated in pertinent part, as follows:

> 3. Although [the Tax Services Office's notice] is dated June 28, 2016 and is addressed to Best Courier at 322 North Shore Drive, that address is office space that Best Courier has rented but which is not staffed on a daily basis. Someone other than me or an authorized representative of Best Courier signed for receipt of the [notice].
>
> 4. Once I received the [notice] on July 27, 2016, I immediately contacted counsel who assisted me in preparing a Petition for Reassessment which was mailed to [the Tax Review Office] on that same day.
>
> ***
>
> 6. Best Courier provides prescription delivery services for Rite-Aid stores in the Pittsburgh, PA area.
>
> ***
>
> 9. None of Best Courier's independent contractor drivers report to an office in person or even by telephone; instead, each of Best Courier's independent contractor drivers pick up from and deliver to Rite Aid stores on as needed basis as determined by Rite Aid.
>
> ***
>
> 12. Best Courier utilizes Contractor Management Services, LLC ("CMS") to provide administrative support to Best Courier, including obtaining, processing, and maintaining W-9 forms, applications for occupational accident insurance, 1099-MISC income forms, and independent contractor agreements.

R.R. 41-42.

MHL-3

On August 31, 2017, the Tax Review Office issued a notice stating, *inter alia,* that a hearing is "necessary, at which each Party may offer testimony and exhibits." C.R., Item 6. The hearing was postponed several times and eventually scheduled for July 30, 2018.

On June 20, 2018, just before the hearing was to start and two years after Best Courier filed its petition for reassessment, the Tax Services Office filed a motion to dismiss Best Courier's petition for the stated reason that Best Courier's petition was untimely, thereby depriving the Department of jurisdiction. Best Courier responded that it was entitled to *nunc pro tunc* relief.

On September 28, 2018, the Department dismissed Best Courier's petition for reassessment for lack of jurisdiction, holding Best Courier was not entitled to *nunc pro tunc* relief because its own negligence caused the petition to be filed "late." The Department erred for two reasons. First, the Department needed evidence to make a finding that Best Courier was negligent, and there was none. Second, the time constraint in Section 304(b) of the Law establishes a statute of limitations that had to be raised promptly by the Tax Service Office, and it was not.

Section 304(b) of the Law sets forth the procedure for an employer to challenge an assessment demand of the Tax Services Office. It states, in relevant part as follows:

> *Any employer against whom an assessment is made may, within fifteen days after notice thereof, petition the department for a re-assessment* which petition shall be under oath *and shall set forth therein specifically and in detail the grounds and reasons upon which it is claimed that the assessment is erroneous.* Hearing or hearings on said petition shall be held by the department at such places and at such times as may be determined by rules and

> regulations of the department and due notice of the time and place of such hearing given to such petitioner.

43 P.S. §784(b) (emphasis added). Section 304(b) states that an employer "may" petition for a reassessment within 15 days "after notice thereof," but it does not state whether the 15 days begins to run upon the date of the notice or the employer's receipt thereof. The Department's own "Notice of Assessment" resolved this ambiguity by stating that Best Courier's petition for reassessment had to be filed within 15 days "after receipt of this Notice." R.R. 21. Best Courier filed a petition for reassessment on the very day of its "receipt of this Notice." *Id.*

Not every statutory time limit has jurisdictional implications, as recently explained by the United States Supreme Court:

> The Court has therefore stressed the distinction between jurisdictional prescriptions and non-jurisdictional claim-processing rules, "which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." A claim-processing rule may be "mandatory" in the sense that a court must enforce the rule if a party "properly raise[s]" it. But an objection based on a mandatory claim-processing rule may be forfeited "if the party asserting the rule waits too long to raise the point."

*Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1849 (2019) (internal citations omitted). Pennsylvania's Supreme Court has likewise explained that jurisdictional time limits in a statute "go to a court's right or competency to adjudicate a controversy," while a nonjurisdictional time limit, such as a statute of limitations, is enforceable but subject to "equitable principles such as tolling except as provided

by statute." *Commonwealth v. Fahy*, 737 A.2d 214, 222 (Pa. 1999).[3] Stated otherwise, the ability to enforce a nonjurisdictional statutory time constraint may be forfeited "if the party waits too long to raise the point." *Fort Bend County*, 139 S.Ct. at 1849.

Whether a statutory time constraint deprives a tribunal of jurisdiction is determined by the language of the statute. In *Commonwealth v. Spotz*, 171 A.3d 675 (Pa. 2017), our Supreme Court considered Section 9545(b) of the Post Conviction Relief Act (PCRA),[4] which states in pertinent part, as follows:

> (1) Any petition under this subchapter, including a second or subsequent petition, *shall be filed within one year of the date the judgment becomes final*, unless the petition alleges and the petitioner proves [one of the three exceptions to the time limit provided in subsections (i) to (iii)].

42 Pa. C.S. §9545(b) (emphasis added). The Supreme Court held that Section 9545(b) established a jurisdictional prescription that implicates "the court's very power to adjudicate a controversy." *Spotz*, 171 A.3d at 678 (quotations omitted).

---

[3] Pennsylvania courts use the term "nonjurisdictional" statutory time constraints whereas federal courts use the phrase "claims processing rules." As does Congress, Pennsylvania's General Assembly routinely uses nonjurisdictional rules to "promote the orderly progress of litigation." *Fort Bend County*, 139 S.Ct. at 1849. For example, Section 6341(c.2) of the Child Protective Services Law provides that "[w]ithin ten days of receipt of an appeal pursuant to this section, the [Department of Human Services] shall schedule a hearing on the merits of the appeal." 23 Pa. C.S. §6341(c.2). Likewise, Section 977 of the Election Code provides that the trial court, upon a petition to set aside a nomination petition, "shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition[.]" Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2937. Those time prescriptions have been construed to be "directory and not mandatory." *See In re Wilson*, 728 A.2d 1025, 1028 (Pa. Cmwlth. 1999); *see also In re Moore*, 291 A.2d 531, 534 (Pa. 1972). Likewise, court-promulgated rules, such as rules of civil procedure, are nonjurisdictional.

[4] 42 Pa. C.S. §§9541-9546.

MHL-6

By contrast, a statute of limitations is nonjurisdictional, even where mandatory language is used. *See*, *e.g.*, 42 Pa. C.S. §5524(1) (action for assault "must be commenced" within two years). In *Bellotti v. Spaeder*, 249 A.2d 343, 344 (Pa. 1969), our Supreme Court explained that a statute of limitations does not go to the judicial power of the court over the controversy or the defendant, "but rather to the mode in which the case is brought before the court." A statute of limitations is procedural in nature and extinguishes the remedy rather than the cause of action. *Echon v. Pennsylvania Railroad Company*, 76 A.2d 175, 177 (Pa. 1950).

In *Echon*, the administrator of a decedent's estate instituted an action in trespass against the defendant railroad approximately two years after the accident that resulted in the decedent's death. Nineteen months later, the railroad asserted that the complaint was time-barred under the Wrongful Death Statute. The railroad argued that the statutory time constraint was a statute of repose that limited the right itself not just "the assertion of the right." *Echon*, 76 A.2d at 177. The Pennsylvania Supreme Court disagreed and held that the act provided a statute of limitations and, further, the railroad had waived the issue by waiting too long to raise the point.

The time constraint in Section 304(b) of the Law uses the directory phrase "may petition," and not the mandatory "shall be filed," as does Section 9545(b) of the PCRA, 42 Pa. C.S. §9545(b). The petition, which must set forth "in detail the grounds and reasons" for its claim, is an original process. 43 P.S. §784(b). Section 304(b) is not a statute of repose because it does not say that a petition for reassessment "shall be forever barred" if it is filed 16 days after the notice of assessment is issued. *Cf.* Section 315 of the Workers' Compensation Act, 77 P.S. §602 (statute of repose).

MHL-7

Section 304(b) does not involve an "appeal."[5] Section 501(e) of the Law states that "unless" a claimant or employer files an "*appeal*" of an unemployment compensation determination "within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address," the determination "*shall be final*." 43 P.S. §821(e) (emphasis added). Failure to meet the mandatory deadline deprives the Unemployment Compensation Board of Review of jurisdiction. *See Pennsylvania Turnpike Commission v. Unemployment Compensation Board of Review*, 991 A.2d 971, 974 (Pa. Cmwlth. 2009). The contrast in these two provisions of the same statute is striking: the words "appeal, "shall" or "final" do not appear in Section 304(b) of the Law.[6] Unlike Section 501(e), Section 304(b) of the Law does not state a jurisdictional proscription.

---

[5] An appeal *nunc pro tunc* is an exception "to the general rule prohibiting the extension of an appeal deadline." *Union Electric Corporation v. Board of Property Assessment, Appeals and Review of Allegheny County*, 746 A.2d 581, 584 (Pa. 2000). The *nunc pro tunc* doctrine originated in the context of untimely appeals of a final judicial order or judgment to an appellate court. In *Commonwealth v. Stock*, 679 A.2d 760, 763 (Pa. 1996), our Supreme Court addressed the "extenuating circumstances" that will permit the filing of an appeal *nunc pro tunc*. The standard for civil cases traditionally required fraud or a breakdown in the court's operations although the courts "have somewhat liberalized this rigid standard." *Id*. (citation omitted). By contrast, in criminal cases "where counsel's conduct has adversely affected the right to appeal," courts have granted an appeal *nunc pro tunc*, even where counsel was negligent. *Id*.

The *nunc pro tunc* doctrine has been extended to statutory "appeals" to administrative tribunals. *See*, *e.g., Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996) (applying *nunc pro tunc* doctrine to appellant's untimely appeal to the Board of a denial of unemployment compensation benefits.)

[6] The Department has not adopted a regulation providing that the mailing of a notice of assessment effects "notice receipt," as it has done for the mailing of referee decisions. *See* 34 Pa. Code §101.53 ("Mailing of notices, orders or decisions of a referee, or of the Board to the parties at their last known addresses as furnished by the parties to the referee, the Board or the Department, shall constitute notice of the matter therein contained.").

MHL-8

Section 304 of the Law does not state the consequence of filing a petition for reassessment more than 15 days after its receipt. *Cf.* 42 Pa. C.S. §9545(b); Section 315 of the Workers' Compensation Act, 77 P.S. §602. This omission is notable in light of the fact that Section 304(d) does state a consequence where the employer (i) does not ever file a petition for reassessment; (ii) does not appear at the reassessment hearing; or (iii) does not appeal the reassessment. In any of these three scenarios, the "assessment" or "re-assessment" becomes final and payable. 43 P.S. §784(d).[7] Section 304(d) does not state that the Tax Services Office's assessment notice becomes "final" on the 16th day after the employer's receipt of the assessment notice.

The time constraint in Section 304(b) of the Law establishes, at most, a statute of limitations. As such, it was the burden of the Tax Services Office to raise this defense to Best Courier's petition in a timely manner and to make its case. Under the Department's own "Notice of Assessment," the time for filing a petition for reassessment did not begin to run until after "receipt of this Notice," R.R. 21, *i.e.*, receipt of the notice by an authorized agent of Best Courier. It was also the burden of the Tax Services Office to show that it did not wait "too long to raise the

---

[7] Section 304(d) states:

> As to any employer who fails to petition for re-assessments, or having petitioned after due notice of hearing, fails to appear and be heard, or, *in case of a re-assessment, to appeal, such assessment or re-assessment of the department shall then become final*, and the contributions and interest assessed or re-assessed by the department became forthwith due and payable, and no defense which might have been determined by the department or in the event of an appeal from re-assessment by the court shall be available to any employer in any suit or proceeding brought by the Commonwealth in the name of the fund for the recovery of such contribution based on such assessment or re-assessment.

43 P.S. §784(d) (emphasis added). The statutory appeal period begins to run after the reassessment proceeding.

point that the petition was untimely filed." *Fort Bend County*, 139 S.Ct. at 1849; *Fahy*, 737 A.2d at 222. The Tax Services Office waited two years to file its motion to dismiss, in spite of the fact that 18 months earlier the Tax Review Office raised the issue of the petition's timeliness in its notice to the parties.

Best Courier argues that the Department erred in its application of the *nunc pro tunc* doctrine because there was no evidence to support this finding. I agree.

In *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979), our Supreme Court set forth the principles of a *nunc pro tunc* appeal, holding that illness can warrant a late appeal where the delay is quickly corrected. In *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996), the appellant suffered a cardiac event and was hospitalized, during which time the appeal deadline passed. The Board held the claimant was not entitled to *nunc pro tunc* relief. The Supreme Court reversed. It rejected that Board's conclusion that the appellant was negligent because he "was able to conduct his appeal from his hospital bed." *Id.* at 1132. The Court chastised the Board, noting that the record was devoid of any evidence to support the Board's assumption on what the claimant could or could not do while hospitalized.

Likewise here, there is no evidence to support the Department's assumption Best Courier was negligent because it did not staff its office so that it would be able to respond promptly to "time-sensitive communications" sent via the United States Postal Service.[8] Adjudication at 9. Calabria described Best Courier's

---

[8] The majority affirms the Department's conclusion that Best Courier was negligent, citing cases where claimants for unemployment benefits had not made arrangements for the forwarding of their mail while they were away from home. *See Ho v. Unemployment Compensation Board of Review*,

MHL-10

business as prescription delivery; its drivers pick up prescriptions and deliver them to Rite Aid stores on as-needed basis, upon contact by Rite Aid. The drivers do not report to the office either in person or by phone. The record is devoid of evidence that Best Courier even uses hard copy communication, as opposed to electronic communication, to conduct its business. Further, Best Courier used Contractor Management Services, LLC to handle all payroll and tax requirements for its drivers; it did not handle these matters internally. Simply, there is no evidentiary support for the Department's assumption that Best Courier was negligent by not daily staffing its office at 322 North Shore Drive. As in *Cook*, 671 A.2d at 1132, the Department erred in basing its determination upon an assumption not grounded in the record evidence.[9]

Section 304(b) of the Law does not establish an "appeal" deadline but, at most, a nonjurisdictional time constraint upon the filing of a petition, a form of original process. It was the Tax Services Office's burden to establish, first, that Best Courier's petition for reassessment was untimely and, second that it did not waive

---

525 A.2d 874 (Pa. Cmwlth. 1987); *Vanker v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 2340 C.D. 2009, filed December 22, 2010); and *King v. Workers' Compensation Appeal Board (Pep Boys)* (Pa. Cmwlth., No. 1796 C.D. 2007, filed February 25, 2008). These cases are distinguishable. Best Courier was not away from home or awaiting a decision on an application for benefits.

[9] There is no rule, as the Department seems to believe, that it is *per se* negligent not to be available for deliveries from the United States Postal Service, let alone a single rule that fits every individual and every business. The Law was written at a time when mail delivery to a "post office address" was the gold standard. *See* 43 P.S. §821(e). Today, e-mail or texting is more likely to achieve meaningful notice. We are, of course, bound by the terms of the Law with respect to the mailing requirements imposed upon the Department. However, the *nunc pro tunc* doctrine is a judicial construct. Its application requires a recognition of today's realities, particularly when determining negligence. This is also why an evidentiary hearing is necessary where, as here, the Department believes Best Courier was negligent. *See Weiman by Trahey v. City of Philadelphia*, 564 A.2d 557, 559 (Pa. Cmwlth. 1989); *Commonwealth v. Pinkett*, 244 A.2d 799, 800 (Pa. Super. 1968).

this issue by waiting two years to raise it. If the *nunc pro tunc* doctrine is to be applied to the filing of original process, it should be employed in a less rigid manner. *See, e.g., Roderick v. State Civil Service Commission*, 463 A.2d 1261, 1263 (Pa. Cmwlth. 1983).

I would vacate the Department's adjudication and remand the matter for the Tax Review Office to determine whether the Tax Services Office waited too long to raise the point that Best Courier's petition for reassessment was time-barred and whether, in fact, the petition was untimely when it was filed on the day of Best Courier's "receipt of this Notice." R.R. 21.

_____
MARY HANNAH LEAVITT, President Judge